**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **KENTES WEST,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 3:16-cv-0987-SMY |
| ) | |
| **UNKNOWN PARTY, and** ) | |
| **S. BEBOUT,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Kentes West is currently incarcerated at the Menard Correctional Center in Menard, Illinois. (Doc. 2 at 1.) Proceeding *pro se*, West previously filed a Complaint under 42 U.S.C. § 1983, alleging that separate groups of officials violated his constitutional rights in several different ways during his time at Menard. (*Id.* at 13-14.) West's original Complaint was severed into nine cases, including the above-captioned case. (Doc. 1 at 10.)

The instant case concerns whether an unknown person violated West's rights when he destroyed his property, whether the same or another unknown person violated West's rights when he charged West money for the repairs of that property and whether Internal Affairs Officer Bebout violated his rights by making false statements about the damage to West's property. This case also concerns whether Bebout violated West's rights when she allowed him to be housed next to a particular inmate at Menard. (*Id.*) West seeks money damages. (Doc. 2 at 38.)

This matter is now before the Court for a review of West's Complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court shall review a "complaint in a civil action in which a

prisoner seeks redress from a governmental entity or officer or employee of a government entity." During the § 1915A review, the Court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint "is frivolous, malicious, or fails to state a claim" or if it "seeks monetary relief from a defendant who is immune."

## Background

Although West's Complaint is thirty-nine pages in length, the narrative portion of it which pertains to this severed case is only a few pages long.[1] (Doc. 2 at 33, 34, 35, 37.) In those pages, West alleges that he returned to Menard Correctional Center on August 26, 2015 and was told that some of the electronic property that had been left in his cell had been damaged. (*Id.* at 33-34.) West claims that an unknown staff member damaged the fan and possibly another piece of his property, but that other staff members falsely claimed that his remaining property was damaged in an effort to make him pay unnecessary repair fees. (*Id.* at 34.). West insists that Internal Affairs Officer Bebout joined in this subterfuge by making false statements in unspecified reports. (*Id.*)

West also alleges that, since his return to Menard in August 2015, he has been placed in a housing gallery where he routinely sees an inmate worker with whom he had previous verbal and physical altercations. (*Id.* at 33.) West filed a number of grievances about this placement but prison officials did not respond. As a result, he became depressed and was placed on a suicide watch in October 2015. (*Id.* at 35.) By early December 2015, West filed another grievance concerning his housing assignment. (*Id.*) On December 24, 2015, he met with Internal Affairs Officer Bebout for an unspecified reason and Officer Bebout told him that he had "made his bed"

---

[1] West filed ninety pages of exhibits with his Complaint. While some of the exhibits might be relevant, the Court is unable to make that determination at this juncture, as West does not describe the exhibits or their content in the narrative of his Complaint.

and that Bebout and her husband, who was a corrections officer at the prison, did not like West because he went on hunger strikes and required suicide watches in the past. (*Id.*)

On January 5, 2016, West was moved to another cell next to an inmate at Menard named White. (*Id.* at 37.) West claims that this move occurred shortly after he spoke with Internal Affairs Officer Bebout about White and told her he was "into it" with him. (*Id.*) West references an altercation that occurred between him and two other inmates in July 2015. (*Id.* at 28.) The two inmates were evidently associates of White's and after the assault, White told West that he "got down" on his buddies and that he would "be got for that." (*Id.* at 29.) At the end of July 2015, White threw feces in front of West's cell and blamed the throw on West—an action that led a number of corrections officers in West's wing to harass him. (*Id.* at 29-30.)

## Discussion

Turning to the substantive allegations in West's severed action, the Court finds it proper to divide the claims in the Complaint into the following counts. The parties and the Court will use these designations in all pleadings and orders, unless otherwise directed by the Court. The Court will conduct a preliminary review of each count in turn.

> **COUNT 1:** Unknown guards at Menard violated West's constitutional rights when they destroyed his property and falsely claimed that other property was destroyed, and Internal Affairs Officer Bebout joined in this violation by making false statements about the status of West's property.
>
> **COUNT 2:** Internal Affairs Officer Bebout violated West's rights when she told him that she did not like him for his recent behavior.
>
> **COUNT 3:** Internal Affairs Officer Bebout violated West's rights by failing to protect him from the White cell placement in January 2016.

### Count 1

The first set of allegations in West's severed action concern the destruction of his property and the filing of false charges related to his property. West claims that unknown

corrections guards destroyed some of his property and lied about the status of other property and that Internal Affairs Officer Bebout was complicit because she lied about the status of his property in an unspecified report. West may be attempting raise a retaliation claim against all of these individuals for their actions related to his property. However, in order to do so, he would need to identify the protected conduct that he engaged in, allege that Bebout and the other unspecified guards were motived by a desire to retaliate against him for his protected conduct when they damaged his property and allege that the conduct those officers engaged in would deter a person of reasonable firmness from engaging in more protected conduct at a subsequent point. *See Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). The Complaint does not sufficiently allege facts to support either of these elements. Thus, any retaliation claim must be dismissed without prejudice.

West may also be attempting to assert a Fourteenth Amendment due process claim concerning the destruction of his property or the improper repair charges for his property, but no due process claim exists on the facts alleged. Allegations of the intentional destruction of property by a state official fail to state a claim under § 1983 if the destruction is not done pursuant to an established state procedure and if the state makes available an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("[W]e hold that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."); *Johnson v. Wallich*, 578 F. App'x 601, 602 (7th Cir. 2014) ("When a state official's conduct is random and unauthorized, due process requires only that an adequate post-deprivation remedy exists."). Here, West alleges that unspecified guards intentionally destroyed his property and he does not

suggest that these losses resulted from some established procedure on the part of the state. *See Johnson*, 578 F. App'x at 602. Moreover, the Seventh Circuit has held that the State of Illinois provides an adequate remedy for these types of deprivation claims via the Illinois Court of Claims. *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993). Because Illinois provides an adequate remedy, West's property claim must be dismissed without prejudice.

There is an additional reason for dismissing West's claims as it relates to the corrections officers who purportedly destroyed his property or lied about the need for repairs. For those officers, West repeatedly refers to the acts of "staff," without clearly laying out the names of the guards and what particular actions the guards took in regards to West's property. § 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005). West can satisfy the personal involvement requirement by using John Doe placeholders if he does not know the names of the guards who acted against him. He can also allege actions by them on information and belief if he does not know precisely what those officers did, but he must at least name an individual by name or Doe placeholder and then lay out what the individual's role was in the constitutional deprivation. If more than one individual was involved in the deprivation, West can state what each individual did to violate his rights, either by naming the individual and describing his role or by stating that John Doe 1 engaged in a certain type of improper action and that John Doe 2 engaged in another type of action. Because West has not included enough information in the Complaint to discern what each guard did to his property, his property claim fails, at least as to the guards.

### Count 2

West alleges that Internal Affairs Officer Bebout violated his rights when she told him in December 2015 that she did not like him because he went on a hunger strike and required a suicide watch in the past. (Doc. 2 at 35.)  It is unclear what type of claim West is attempting to raise concerning Bebout.  While *pro se* prisoners need not put forth detailed legal theories or offer legal authority to state a claim under § 1983, they must at least allege a violation of a right secured by the United States Constitution or the laws of the United States, for the "first step in any [§ 1983] claim is to identify the specific constitutional right infringed." *See Albright v. Oliver*, 510 U.S. 266, 271 (1994).  To the extent West is suggesting that Internal Affairs Bebout had a role in denying the grievances he wrote upon his August 2015 return to Menard and that her statement in December 2015 suggested that her denials were retaliatory in nature, he needs to allege as much.  In other words, he must specify what protected conduct he engaged in and what actions Bebout took because of that conduct.  *See Higgs*, 286 F.3d at 439.  At this point, West has not alleged a clear constitutional violation as to Bebout concerning her December 2015 statement.  Therefore, the claim must be dismissed without prejudice.

### Count 3

West's final cause of action also involves Internal Affairs Officer Bebout.  He alleges that he spoke with her at some unknown point in late 2015 or early 2016 and that after telling her he was "into it" with inmate White, West was moved to a cell next to White.  Based on these facts, West suggests that Bebout failed to protect him from a threat at the prison in violation of the Eighth Amendment.

To state an Eighth Amendment failure to protect claim, a prisoner must allege that he is incarcerated under conditions posing a substantial risk of serious harm, and that prison officials acted with deliberate indifference to that risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 832 (1984). A substantial risk can exist when a prisoner exhibits characteristics that can make him more likely to be victimized, when the assailant is alleged to have a known propensity for violence, or when the prisoner tells officials of a specific threat to him from a specific source. *See Brown v. Budz*, 398 F.3d 904, 907 (7th Cir. 2005).

Even when West's Complaint is construed liberally, he has not sufficiently alleged that Bebout knew of a risk of harm to him. The only allegation in his Complaint concerning Bebout's knowledge of West's characteristics or of the threat of harm posed by White is vague and conclusory. West states only that he told Bebout that he was "into it" with White. Without more, West has failed to state a plausible claim against Bebout and his Eighth Amendment claim fails. *E.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

Finally, West seems to suggest that Bebout engaged in some form of retaliation concerning his cell placement. However, as is true with respect to the retaliation claim previously discussed, West has not alleged sufficient facts to state a viable claim. He needs to specifically allege that he engaged in some form of protected conduct and that Bebout was motivated by that conduct to engage in retaliatory acts against him. *See Higgs*, 286 F.3d at 439. Here, West does not allege, even on information and belief, that Bebout played any role in his placement near White. Accordingly, West's claim related to the cell placement must be dismissed without prejudice.

### Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, West's Complaint (Doc. 2) is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that, should Plaintiff wish to proceed with this case, Plaintiff shall file his First Amended Complaint within 28 days of the entry of this order (on or before January 9, 2017). It is strongly recommended that Plaintiff use the form designed for use in this Court for civil rights actions. Plaintiff should label the pleading "First Amended Complaint," and he should include Case Number 16-cv-0987-SMY. The First Amended Complaint should concern only this severed case, namely the August 2015 destruction of property by corrections officers, the December 2015 conversation with Internal Affairs Officer Bebout, and the January 2016 conversation with Officer Bebout and her role in West's cell assignment near inmate White. The narrative of the First Amended Complaint should specify what each named official or each John Doe placeholder did to violate West's rights as to those events. If more than one unknown official was involved in the first event, West should name multiple John Doe placeholders as defendants in the caption (John Doe 1, John Doe 2, and so on) and then identify what each individual Doe did to him. For instance, if one unknown official destroyed his lamp and another unknown official destroyed his television, West should name as defendants John Doe 1 and John Doe 2, and then separately state in the narrative what each did.

An amended complaint supersedes and replaces all previous complaints, rendering previous complaints void. *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to a complaint. Thus, the First Amended Complaint must stand on its own, without reference to any other pleading. Should the First Amended Complaint not conform to these requirements, it shall be stricken.

Plaintiff must also re-file any exhibits he wishes the Court to consider along with his First Amended Complaint. Failure to file a First Amended Complaint shall result in the dismissal of this action with prejudice. Such dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g). No service shall be ordered on any Defendant until after the Court completes its § 1915A review of the First Amended Complaint.

In order to assist Plaintiff in preparing his First Amended Complaint, the **CLERK** is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: December 12, 2016**

s/ STACI M. YANDLE
**STACI M. YANDLE**
**United States District Judge**
